## DODGE COAL STORAGE CO. v. NEW YORK CENT. & H. R. R. CO.

### (Circuit Court, N. D. New York. July 27, 1905.)

### No. 6,920.

PATENTS—PATENTABLE INVENTION—AGGREGATION OF OLD ELEMENTS IN STORAGE APPARATUS.

The Piez & Beaumont patents, No. 668,960 and No. 688,111, granted on a division of the same application, both being for improvements in storage apparatus consisting of mechanism for piling coal or analogous material and for removing material from a pile, are void for lack of novelty and patentable invention in view of the prior art, and because each is for a mere aggregation of old elements, each of which performs separately its old function.

In Equity. Suit in equity to restrain the alleged infringement of two United States letters patent, viz: No. 668,960, dated February 26, 1901, for improvements in storage apparatus, to Charles Piez and Robert H. Beaumont, assignors to the Dodge Coal Storage Company, and No. 688,111, dated December 3, 1901, for improvements in storage apparatus, to same parties.

Howson & Howson (Charles Howson, of counsel), for complainant.

Geo. C. Wing, R. S. Taylor, and E. M. Hulse, for defendant.

RAY, District Judge. The application for letters patent No. 668,960, dated February 26, 1901, was filed October 18, 1899. A division was allowed and application for letters patent No. 688,111, dated December 3, 1901, on such division, was filed December 31, 1900. Both inventions are for improvements in storage apparatus. No. 668,960 says, "Our invention relates to certain improvements in mechanism for piling coal and analogous material and for removing material from a pile," and as to the object, "The object of our invention is to provide a comparatively cheap structure which will pile material in a semicircular or circular pile from a fixed point, and remove material from the pile to a fixed point," and as to how this is done, "This object we accomplish by so constructing the apparatus that the conveyer. mounted on a pivoted structure, can pass through the pivot of said structure and receive material at a

fixed point, the elevating and conveying mechanism being carried solely by the movable section." This patent has six claims. The main or central or controlling idea of each is a fixed structure having an open center with a movable structure pivoted thereto and supported thereby, the pivot having an open center, through which open fixed structure and open pivot the coal or other material is hoisted or elevated to the movable structure along which it is transported by certain carrying apparatus to the desired point. By merely reversing the process—that is, by taking the coal from the pile and bringing it back and letting it down through the open pivot and tower to the pit or a hopper, or into the car, or both direct, we have a coal loader. It works either way with equal facility. The six claims read as follows:

"(1) The combination of a fixed structure, a pivoted structure arranged to swing thereon, the said pivot having an open center, and elevating and conveying mechanism on said pivoted structure, said mechanism arranged to elevate material through the open center of the pivot, substantially as described.

"(2) The combination of a fixed structure having an open center, a movable structure pivoted to the fixed structure, and elevating and conveying mechanism on said movable structure, the elevating mechanism arranged to elevate material through the fixed structure and through the pivot of the movable structure, substantially as described.

"(3) The combination of a fixed structure, a pivoted structure arranged to swing thereon, said pivot having an open center, and an endless conveyer passing along said pivoted structure through the pivot of the same and down through the fixed structure, substantially as described.

"(4) The combination of a fixed structure having an open center, a movable structure arranged to swing thereon and having an open pivot, and elevating and conveying mechanism for carrying material continuously forward through the fixed structure, through the open pivot and along the movable structure, substantially as described.

"(5) The combination of a fixed structure having an open center, a movable structure arranged to swing on the fixed structure and having an open pivot and having two troughs, an endless conveyer mounted on the movable structure and arranged to travel on said troughs, said conveyer passing through the open pivot and the fixed structure, and means for loading the buckets of the conveyer at the fixed structure, substantially as described.

"(6) The combination in storage apparatus of a fixed structure having an open center, a movable structure pivoted thereto, said pivot having an open center, two conveyer-troughs carried by the movable structure, a bucket elevator and conveyer mounted on the movable structure and its horizontal runs arranged to travel on the said troughs, the elevating-section of the conveyer extending through the open pivot and through the fixed structure to a receiving-point, with means carried by the movable structure for charging the return run of the conveyer with material from the pile, substantially as described."

As shown in the drawings, the fixed structure with open center is of iron or wood framework, and the movable structure pivoted thereon, which may be of any reasonable or practicable length, is in the form of a truss, which is supported at its outer end by a leg or legs or a tower-like structure supported by a small wheeled carriage which travels on a circular track. This permits the shifting of the location of the pivoted movable structure, always moving on its fixed pivoted end, however, to any desired position within the area circumscribed by the circular track, and permits coal to be lifted and carried by the hoisting and carrying mechanism from the bottom of the open fixed structure up through the interior of the

139 F.—62

fixed structure and pivot to the movable pivoted structure and along it to the point where the coal or other material is to be deposited, or from such pivot back over the same route to the bottom of the fixed structure. The great object is to lift and carry the coal above the surface of the earth, as much above as the surface of the completed pile of coal or other material, when stored, demands; to take it from a given point, avoiding the necessity for an extensive and expensive pit or hopper, or of moving the hoisting and carrying apparatus from point to point. If this was not done, the entire area could not be covered to the depth desired.

In the first claim of the first patent we have in combination, three elements: (1) A fixed structure; (2) a pivoted structure arranged to swing thereon, the pivot having an open center; and (3) elevating and conveying mechanism on the pivoted structure so arranged as to elevate the material through the open center of the pivot. Here we have no extended "pivoted structure," no support for the outer end (or ends of it, if it be pivoted in the center), no open center for the fixed structure. In claim 2 thereof we have in combination (1) a fixed structure with open center; (2) a movable structure pivoted to the fixed structure; and (3) elevating and conveying mechanism on the movable structure, such mechanism so arranged as to elevate material through the open centered fixed structure and the pivot of the movable structure. Here we differ from claim 1 in having an open centered fixed structure, but not an open centered pivot, except by implication. In claim 3 thereof we have (1) a fixed structure; (2) a pivoted structure arranged to swing thereon, said pivot having an open center; (3) an endless conveyer passing along said pivoted structure and down through the fixed structure. Here the endless conveyer takes the place of conveying mechanism. In claim 4 thereof we have (1) fixed structure with open center; (2) movable structure arranged to swing thereon and having an open pivot; and (3) elevating and carrying mechanism for carrying material continuously forward through the fixed structure, through the open pivot, and along the movable structure. In claim 5 thereof we find (1) fixed structure with open center; (2) movable structure arranged to swing on the fixed structure, and having an open pivot and having two troughs; and (3) an endless conveyer mounted on the movable structure, and arranged to travel on said troughs, the conveyance also passing through the open pivot and the fixed structure; and (4) means for loading the buckets of the conveyer at the fixed structure. Here are added two troughs on which the conveyer travels, but they are a part of the movable structure, and probably are permissible in the other claims. "Means for loading the buckets of the conveyer at the fixed structure," top or bottom thereof, might include many things. In claim 6 we have (1) fixed structure with open center; (2) movable structure pivoted thereto, said pivot having an open center; (3) two conveyor troughs carried by the movable structure; (4) a bucket, elevator, and conveyer, etc.; and (5) with means carried by the movable structure for loading the return run of the con-

veyer. If any novel element, or element of novelty, enters into this patent and any claim thereof, it enters into all of such claims, and consists of the open pivot. There must be novelty in an invention of this kind, and in every valid claim must be found one novel element.

As the contention is made that the second patent, No. 688,111, is void because for the same invention described and claimed in No. 668,960, and because a patentee can have but one patent for the same invention, we will now consider the elements of the second patent—that of December 3, 1901. As to the matter to which it relates and the object the specifications say:

"Our invention relates to certain improvements in mechanism for piling coal or analogous material and for removing material from a pile.

"The object of our invention is to make a comparatively cheap structure of this type in which the material can be piled in two semicircular piles, and in which the conveying and elevating mechanism is carried entirely by a horizontally-swinging support."

The claims of the patent are as follows:

"(1) In combination, a track, a pit located in position to receive coal dumped from a car on said track, a tower above said pit and having a clear hoisting-opening above the pit, a horizontally-swinging support extending laterally from said tower, a trackway upon said support, a bucket-carriage upon said trackway, a bucket, and means whereby said bucket may be hoisted and lowered both within said tower and from said trackway, and means whereby said carriage may be propelled, substantially as described.

"(2) The combination of a tower having an axial hoisting-opening extending through its base, a horizontally-swinging support connected with said tower, a trackway extending from substantially the pivotal axis of said tower out onto said support, a carriage on said trackway, a coal-bucket, and means whereby said coal-bucket may be hoisted and lowered from said carriage, substantially in the pivotal axis of said tower and also at other points on said trackway, substantially as described.

"(3) In a device for handling and storing coal and similar materials, the combination with a tower mounted to turn upon a pivot and having a central hoisting and lowering opening, a receiving-bin beneath said opening and a carrier-support extending from said tower and movable with said tower as a pivot, of a hoisting and conveying apparatus mounted upon said tower and carrier-support, and adapted to take material from and to deposit it within either the bin or the space covered by said support at will.

"(4) In a device for handling and storing coal and similar materials, the combination with a pivoted tower having an axial hoisting-opening, a radial track connected with said tower and movable upon a common pivot therewith, of a receiving-bin beneath said tower, and a hoisting and conveying apparatus comprising a carrier movable on said track, and a coal receiver and conveyer carried thereby and adapted to be lowered within the tower into said bin.

"(5) In a device for handling and storing coal and similar materials, the combination with a tower mounted to turn upon a pivot and having a clear central hoisting-opening therein, extending through its base, and a radial support for a carrier adapted to swing with the tower, of a hoisting apparatus mounted upon said tower and radial support, and adapted to take or deliver material at will either through the axis of the tower or from beneath said support.

"(6) In a device for handling and storing coal and similar materials, the combination with a tower mounted to turn upon a pivot and having a clear central hoisting-opening therein, a radial arm adapted to swing with the tower and a traveling support for the outer end of said arm, of a hoisting and conveying apparatus mounted upon said tower and radial arm and adapted to take or deliver material at will, either through the axis of the tower or from beneath said arm.

"(7) In a device for handling and storing coal and similar materials, the combination with a tower mounted to turn upon a pivot and having a clear central hoisting opening therein, a radial arm adapted to swing with the tower, hoisting and conveying apparatus mounted upon said tower and arm, and an engine for operating said mechanism also mounted upon and swinging with the tower, substantially as described."

We are impressed at once on the mere reading that the central and controlling idea of the patent and of each and every element is a tower on a pivot, such tower and pivot being open in the center so as to permit the coal or other material hoisted and carried to be raised (or lowered as the case may be) through the interior of this pivoted structure. This is plainly expressed in the following paragraph of the specifications:

"The essential feature of the above-described apparatus is the open fixed structure or tower, a horizontally-swinging support pivoted to the tower and arranged to swing over a certain area, the pivot having an open center through which the material can be elevated from a hopper or pit to the swinging support and carried along the said support and discharged at any point desired. The structure is also so constructed that the clam-shell bucket can remove material from the pile, and the bucket can be carried along the swinging support and its contents deposited at any point desired, either directly into cars or boats or into the hopper."

This patent, in its claims, adds some elements not found among the elements expressly mentioned in the claim of the first patent; as, for instance, two railroad tracks and a pit or hopper. But the first patent and its claims presupposes a means for bringing coal to the storage apparatus, including a road and vehicles, and this would include cars and railroad tracks. It also presupposes a place beneath the fixed structure, where the coal may be deposited before being taken up for storage. It might be taken from a car, a wagon, the ground, or a hole in the ground, viz., a pit or hopper. The railroad tracks are no more a part of the patent or invention described and claimed than are the cars running thereon, or the coal in the mine. So far as the construction or the working and operation of the invention is concerned, or so far as the operation and working of the hoisting and transporting apparatus used for storing the coal—in short, so far as the entire storage apparatus is concerned, including its supports and motive power, the tracks and cars and coal, or other material, and even the pit or hopper under the tower, are entirely disconnected therefrom. We might as well add a reaping machine as an element to a patented threshing machine, when the one is entirely disconnected from the other, as to add these railroad tracks to claim 1 as an element thereof, and then say the second patent is not for the same invention as the first. These tracks, presumably, are used to carry the cars that bring the coal from the mines to the hopper or pit into which it is "dumped" before being hoisted and carried by the storage apparatus to the points of storage. Why not include a coal mine and apparatus for crushing the coal and cars running on the railroad tracks leading to and connecting with those which reach the pit or hopper? Coal cannot be stored until it is mined, elevated from the mine, and transported to the place of storage.

Still the fact remains that the claims of the later or second patent are somewhat restricted in describing some of the elements thereof —that is, narrower—and in other cases we find an added element as stated. This raises the question whether the second patent for an invention is for the same invention described in the prior or first patent, where the invention in both resides in the introduction into the combination of a single novel element found in each claim of such prior patent and each claim of the subsequent patent, and not in a new or novel arrangement of old and well-known elements working in a new way to produce an old result or in the old way to produce a new result, but in the subsequent patent, elements, not novel, but old and well known, are added, and such added elements were necessary adjuncts of the first, as much so as they are of the second. In the storage apparatus of the first patent we have the fixed structure, the movable structure pivoted thereon, the pivot and fixed structure being open in the center to admit the passage of the bucket or buckets carrying the material to be stored, and the extension of the movable structure and the elevating and conveying mechanism, and means for loading the buckets of the conveyer. This is all there is of the storage apparatus of the second patent. The terms of the claims differ. The necessary elements of each claim exist in both, and are mentioned in both, but are described differently. If the first operates at all, it must be placed where coal is already placed so as to be under the pivot and open fixed structure, or where it can be brought and placed there, or where coal is already stored in the storage area, and is to be taken to the space under the fixed structure. It is true that when a person taking a patent for a combination puts into the combination certain elements, all are made material so far as he is concerned. But does it follow that a few years later he may take another patent for the same thing on adding to the old combination of the claim another element not novel, and one that does not change the operation, or the result of the operation, of the combination? But a combination and its elements are distinct inventions, and a patent for the combination is not the same as a patent for the elements, nor does it cover them. Rowell v. Lindsay, 113 U. S. 97, 5 Sup. Ct. 507, 28 L. Ed. 906; Corn Planter Patent, 23 Wall. 181, 23 L. Ed. 161.

In Walker on Patents we find this statement (section 180, p. 166) :

"On the other hand, two or more related patents may lawfully be granted for different parts of one extensive machine. In such cases it is proper to describe the whole machine in each of the specifications, and to picture the whole machine in each set of drawings, thus causing the separate letters patent to differ from each other only in their claims."

And in section 180a, pp. 167, 168, 169, we read:

"Sec. 180a. Only one valid original patent can be granted to an inventor on one invention; and, if a plurality of such patents are thus granted, all except the first are void. * * * And no monopoly of any invention is secured to any patentee by any patent otherwise than by a claim in that patent which is coextensive with that invention. Therefore the rule for ascertaining the identity or the nonidentity of the invention or inventions of a plurality of resembling original patents granted to one inventor is the same

as the rule for ascertaining the identity or nonidentity of the invention or inventions of a plurality of resembling original patents granted to a plurality of inventors. And that rule consists in comparing the claims of the patents in question, and finding identity or nonidentity of invention, according as those claims are found to be coextensive or not coextensive. Claims are coextensive which cover the same combination, of the same number, of the same parts, with the same features, though the functions which are mentioned in the claims are not coextensive. That was held to be the character of the respective claims of two patents to the same inventor in the case of Miller v. Eagle Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121; and therefore the second of those patents was held to have been granted for the same invention as the first, and to be void. But two claims are not coextensive which specify different combinations of parts of a process, machine, or manufacture, even where some of those parts are in each of the combinations, because the claim which specifies fewest of those parts may be infringed by what will not infringe any claim specifying more of those parts. That was held to be the character of the respective claims of two patents to the same inventor in the case of Suffolk Co. v. Hayden, 3 Wall. 315, 18 L. Ed. 76, and therefore the second of those patents was held to have been granted for another invention than the first, and to be valid. And two claims are not coextensive where one of them specifies all the features of any or all of the parts of its subject, while the other omits one of those features, because the latter may be infringed by processes or mechanisms which lack that feature, while the former cannot."

In 2 Robinson on Patents, § 462, we find this rule:

"Subject-matter must not include inventions already patented in the United States by the same inventor. An application which, together with new matter, includes matter already patented in the United States by the same inventor, is within this rule, as well as one whose scope corresponds exactly with that of the preceding patent."

Still the second patent is for a combination, as is the first, and the second includes elements not found in the first. The claims are not, therefore, coextensive.

In Miller v. Eagle Manufacturing Company, 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121, it is held: "No patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ." But the terms may differ, and mean and describe the same thing, while, if the elements of the claims differ, we have, perhaps, a different patent.

But, passing this, we come to the other questions in the case. The defendant insists that in view of the prior art there is no patentable invention disclosed, and that the complainant's structure is but an aggregation of old devices. The patentees of the complainant's patent are in no sense pioneers in this invention. Theirs, if an invention, is in no sense a pioneer. The complainant's counsel says:

"The fundamental conception—the keynote—of the patents in suit is the making of a large area tributary to a single central point in storage apparatus. The apparatus of the patents embody the novel idea of concentration of the delivery of the material at a fixed point to which every square foot of the storage area is tributary."

This idea as to bringing the coal in from the area is found in the patent, but it is not a novel idea. The idea as to the storage of coal on the area of limited storage territory is to deliver it from, not at, a given central point to any and every point of the storage area. This is not a novel idea. It is not patentable in any event.

The man in the hayfield cocking hay, or in early spring picking and piling stone or scattering fertilizer from the pile dumped from the wagon, well understands the economy, etc., of moving to and from and of carrying to or of distributing from a given central point if it is desired to cover a given circumscribed area. The pivoted and swinging well curb for raising water from the well or the pivoted and swinging crane for stone and other heavy material recognized all this long before the apparatus of this patent was devised. The prior art shows the idea to be old. The hollow tower or fixed or revolving structure, or structure with the lower part fixed and the upper part revolving on a pivot (pivoted to the lower part), is clearly old. Turntables on the surface of the earth for turning engines or loaded cars are old. The one part is on a fixed structure—the masonry on the earth; the other part, which revolves, is above on the underside of a frame with tracks to receive the engine. Otherwise it is open. If not intending to run something onto the revolving part, take away the rails and leave it open. This is a mere matter of construction. If it is desired to use this turntable or turning structure above the earth, raise the foundation above the earth and it is done. If it is desirable to have an open turntable or structure when so elevated, construct it with an open center. Any suitable structure may be constructed on and as a part of the upper portion of this turntable. The pivotal portion and turning arrangement may be at the bottom or at the top of the tower or at any intermediate part. This is mere matter of location, and requires no inventive skill to determine whether it shall be at the one point or the other, any more than does it require inventive skill to determine that, if it is desirable to carry buckets of coal up through the interior of a turntable or pivoted device, the way to do it is to construct the turntable or pivot with an open center. The structure turning on the fixed structure, and supported thereby, must be so constructed as to balance, or else be supported at the end or ends. This structure may support and carry the lifting and transporting apparatus and the engine that furnishes the motive power. All these things we have in the patents in suit. The rails on the ground support the cars that bring the coal. Their work and mission ends. The car dumps the coal and goes away. The pit receives and holds the coal, and does nothing else. Now we have coal stored in a pit. It is desired to store this coal, and more, as it may be brought, on the given area about the pit. It must be lifted and carried above the surface of the earth, as before stated. An elevated fixed structure. What for? To support another structure and a lifting device. Why this other structure mentioned, the turning or pivoted structure? To support the carrying device. The second structure must be made to turn. Why? So as to permit the device carrying the coal to be placed in different positions above the earth covering the entire area on which the storage is to be made. How is this to be accomplished? By pivoting the second structure on the first. By an open pivot if the coal is to be elevated on the interior of such structures and pivot. The

fixed structure holds up the other, the movable, structure. It does no more than this. The movable structure pivoted on the other carries or supports the lifting and carrying device and does no more. It is turned to right or left occasionally, as an independent proceeding or operation, on the pivot and leg at the end. The lifting and carrying device, operated by an engine or other power, picks up the coal, and carries it to the point of destination. Each element does its work, and no more. And everything is done in succession. We have, in short, a revolving supporting device for a lifting and carrying device. The tower above the turntable makes a complete revolution on its pivot, because it is desirable to deposit material on nearly every part of the area of the circle. Had the purpose been to take coal from a car or a pit to a boat, it would not have been made completely revolvable because desirable to deposit on one side of the tower only. The prior art had not failed. All that was required was to make the tower, with its arm, completely revolvable. Engineering skill was adequate to the work. There is not a new idea in the whole combination, not even in the putting together. It is a mere assemblage of old elements, each doing its work in the old way. I will not take time to refer to all the structures in the prior art, but refer to the following:

In patent to E. L. Clark, October 15, 1889, No. 413,031, we find a pit directly under a revolvable tower (a tower mounted on an open turntable or pivot open in the center, with a hoisting apparatus inside taking coal from the pit up through the interior or open center of the tower and discharging it into a chute which carries it into a pile outside. A car on a track at the surface of the ground is discharging coal into the pit. The elevating machinery is operated by an engine mounted on the turntable. Now, attach to this tower at proper elevation the truss or bridge structure to support the elevating and carrying apparatus, and support that structure at its outer end by a leg, if required, and we have in principle and in substance, and in every substantial detail, the complainant's devices. In the prior art, patent to one G. H. Hulett, December 13, 1892, No. 487,865, we have a car of coal immediately under a hollow tower discharging coal into a bucket just outside the tower, which bucket, by means of a hoisting and carrying apparatus, is carried up to and along a horizontal truss structure or arm, and may be dumped at any point desired. This horizontal truss or arm, which supports the hoisting and carrying apparatus, is pivoted on the open tower, which supports it at the end where the load is lifted, and is supported again towards its outer end by another tower, which is movable, and carried by wheels upon a circular track. This differs from complainant's, so far as principle and idea of means are concerned, mainly, if not entirely, in taking the load up outside the tower. But combine this with the Clark open revolvable tower and pit—and this is what complainant did—and we have the patents in suit. There is no evidence of invention in making the combination. In fact, ordinary engineering and mechanical skill, operating with the well-known devices of the prior art to produce

a storage apparatus for covering all available space within the interior of a defined circle, had no difficulty in constructing the devices of the complainant's patents, and alleged to be infringed by defendant. In determining whether or not inventive skill, as contrasted with mere mechanical or engineering skill, has been displayed, we are to consider the art in which the work in question was done, the state of that art, and the results attained. Here we have no new result. Coal had been stored before, and just as well, and from a central point; but, it is said, not over so great an area. Possibly true. But all that was required was to make the elevated and pivotal part of the tower carrying the swinging arm describe a complete circle or make a complete revolution and the work was done—the end attained.

In Atlantic Works v. Brady, 107 U. S. 192, at pages 199, 200, 2 Sup. Ct. 225, at page 231, 27 L. Ed. 438, Mr. Justice Bradley said:

"The process of development in manufactures creates a constant demand for new appliances, which the skill of ordinary head workmen and engineers is generally adequate to devise, and which, indeed, are the natural and proper outgrowth of such development. Each step forward prepares the way for the next, and each is usually taken by spontaneous trials and attempts in a hundred different places. To grant to a single party a monopoly of every slight advance made, except where the exercise of invention, somewhat above ordinary mechanical or engineering skill, is distinctly shown, is unjust in principle, and injurious in its consequences."

In Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749, it was held:

"A combination of old elements is not patentable unless they all so enter into it as that each qualifies every other. It must either form a new machine of distinct character and function, or produce a result which is not the mere aggregate of separate contributions, but is due to the joint and co-operating action of all the elements."

In the patents in suit we do not have a new machine of distinct character and functions. A pit under an open centered tower receives and holds coal. A fixed structure holds up a movable structure turning thereon. This, in its turn, supports an elevating and carrying device set in motion by a steam engine or some other power. The result is, coal or some other material is taken by the lifting and carrying device from one point to another. The two structures hold up the device that carries the coal. How is the element of the railroad track qualified in any degree by either of the other elements, saying nothing of all of them? How is the element of the track qualified by the revolving truss structure? How is the element of the pit qualified by the leg supporting the outer end of the swinging arm or truss? How do these coact?

In Pickering v. McCullough, supra, the court (pages 317, 318, of 104 U. S. [26 L. Ed. 749]) said:

"We are clearly of opinion that this is not patentable. It comes plainly within the rule. as stated by Mr. Justice Strong in Hailes v. Van Wormer, 20 Wall. 353, 368, 22 L. Ed. 241, where he said: 'All the devices of which the alleged combination is made are confessedly old. No claim is made for any one of them singly, as an independent invention. It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in com-

mon use before the combination was made. But the result must be a product of the combination, and not a mere aggregate of several results, each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect, without the production of something novel, is not invention.' 'The combination, to be patenable,' said Mr. Justice Hunt, in Reckendorfer v. Faber, 92 U. S. 347, 357, 23 L. Ed. 719, 'must produce a different force or effect or result in the combined forces or processes from that given by their separate parts. There must be a new result produced by their union. If not so, it is only an aggregation of separate elements.'"

In Hailes v. Van Wormer, 20 Wall. 353, the court, at page 368 (22 L. Ed. 241), said:

"It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results, each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention. No one, by bringing together several old devices without producing a new and useful result, the joint product of the elements of the combination, and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others, in combination."

In the lead pencil case of Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719, there was a combination of ordinary lead pencil for writing or figuring and of rubber for erasing the marks or letters made by the pencil. The writer desires to write and have his writing and figures correct when completed. As a part of this whole process he uses this pencil; lead at one end, erasing rubber at the other, the wood attached to and supporting the rubber. Held no invention in putting the lead and rubber into the wood in this combination. The wood held both the other elements in position, and all formed one instrument, but the pencil performed its old function of making marks on the paper, and the rubber its old function of erasing the marks. They did not coact, perform any joint function; the one element in no way qualified the other.

In Brinkerhoff v. Aloe, 146 U. S. 515, at page 516, 13 Sup. Ct. 221, at page 224, 36 L. Ed. 1068, the rule is clearly and concisely stated thus:

"To sustain a patent on a combination of old devices it is well settled that a new result must be obtained which is due to the joint and co-operating action of all the old elements. Either this must be accomplished, or a new machine of distinct character and function must be constructed. Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749; Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241; Tack Co. v. Manufacturing Co. (C. C.) 3 Fed. 26, 9 Bissell, 258; Wringing Machine Co. v. Young, 14 Blatchf. 46, Fed. Cas. No. 9,508. If several old devices are so put together as to produce even a better machine or instrument than was formerly in use, but each of the old devices does what it had formerly done in the instrument or machine from which it was borrowed and in the old way, without uniting with other old devices to perform any joint function, it seems that the combination is not patentable."

In Richards v. Chase Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831, 39 L. Ed. 991, the patent was for a device for taking grain from one car to another and weighing it during the process of transfer. There was a building with a grain elevator, two railroad tracks entering this building, and such arrangements that the grain within a car on one track was discharged into the foot of an elevator, and taken thence to a hopper, where it was weighed, and then forwarded through a discharge pipe into a car on the other track. The elements of this combination were all old. The court, at page 302 of 158 U. S., page 833 of 15 Sup. Ct. (39 L. Ed. 991), said:

"It is not claimed that there is any novelty in any one of the elements of the above combination. They are all perfectly well known, and, if not known in the combination described, they are known in combinations so analogous that the court is at liberty to judge for itself whether there be any invention in using them in the exact combination claimed. We do not feel compelled to shut our eyes to a fact so well known as that elevators have for many years been used for transferring grain from railway cars to vessels lying alongside, and that this method involves the use of a railway track entering a fixed or stationary building, an elevator apparatus, elevator hopper scales for weighing the grain, and a discharge spout for discharging the grain into the vessel. There is certainly no novelty in using two railway tracks instead of one, or in discharging the grain into a second car instead of a storage bin or a vessel. Unless the combination accomplishes some new result, the mere multiplicity of elements does not make it patentable. So long as each element performs some old and well-known function, the result is not a patentable combination, but an aggregation of elements. Indeed, the multiplicity of elements may go on indefinitely without creating a patentable combination, unless by their collocation a new result be produced. Thus nothing would have been added to the legal aspect of the combination in question by introducing as new elements the car from which the transfer was made, the engine that drew such car, the steam shovel, the engine that operated the shovel and the elevator, as well as the locomotive which drew the loaded car from the building, though these are all indispensable features; since each of them is an old and well-known device, and performs a well-understood duty."

This quotation, just given, is quite pertinent as applied to the claims of the second patent adding as elements the railroad tracks and pit. Many other cases might be cited and quoted from, all to the same effect, but it would add nothing to what has been said. In Palmer v. Corning, 156 U. S. 342, at pages 345, 346, 15 Sup. Ct. 381, at page 382, 39 L. Ed. 445, the court cites and quotes with approval from Hailes v. Van Wormer, 20 Wall. 353, 368, 22 L. Ed. 241; Reckendorfer v. Faber, 92 U. S. 347, 357, 23 L. Ed. 719; Pickering v. McCullough, 104 U. S. 310, 318, 26 L. Ed. 749; and Thatcher Heating Co. v. Burtis, 121 U. S. 286, 294, 7 Sup. Ct. 1034, 30 L. Ed. 942. Those cases remain unshaken.

If the letters patent in suit last granted are not void because they are for the same invention described and claimed in those in suit first granted—of which I have little doubt—they are void for want of novelty and patentable invention in view of the prior art and because for a mere aggregation of old elements. For the same reasons letters patent in suit first granted are also void.

The defendant is entitled to a decree dismissing the complaint, with costs.