# RICHARDS ·*v.* CHASE ELEVATOR COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 310. Argued April 25, 1895. — Decided May 20, 1895.

If letters patent be manifestly invalid upon their face, the question of their validity may be raised on demurrer, and the case may be determined on the issue so formed.

Letters patent No. 308,095, issued November 18, 1884, to Edward S. Richards for a grain transferring apparatus, are wholly void upon their face for want of patentable novelty and invention.

THIS was a bill in equity for the infringement of letters-patent No. 308,095, issued November 18, 1884, to the plaintiff Richards, for a grain transferring apparatus.

The purpose of the invention, as stated by the patentee, was "to provide improved means for transferring and weighing grain without mixing different lots or loads with each other, thus preserving the identity of each lot while it is being transferred from one car to another."

The device in question was substantially one for shifting grain from one car to another through an elevator, by means of which the grain is raised from one car to a hopper in the elevator, where it is weighed and discharged into another car. The device is illustrated by the drawings on page 300:

The patentee thus explained the operation of his device: "The car to be unloaded — for example, the car B — is drawn upon the track F and allowed to stand in such a position that the door will be directly opposite the chute J. If the grain is to be transferred to a car opposite, or about opposite, the car B — for example, to the car D — I close the door or valve L and open the valve K. The grain is then shovelled from the car by means of a steam shovel, or otherwise, into the chute J, from which it passes into the elevator leg, through which the buckets move upwards. The grain is thus elevated and discharged into the hopper of the hopper scales, located for discharging its contents into the car D. That hopper has its

*Fig. 1.*          *Fig. 2.*

valve closed while being filled, but when filled the grain therein is weighed and discharged into the car intended to receive it."

The patentee further explained that if the cars are not opposite to each other, he closes the valve K and opens the valve L, through which, by a similar method, the grain is carried, lifted, and discharged into the other car.

The claims of the patent were as follows:

"1. The combination of a fixed or stationary building, the tracks F and G, an elevator apparatus, an elevator hopper scales having a fixed or stationary hopper provided with a valve or slide in its bottom, and a discharge spout, P, adapted and arranged for discharging the grain directly from the said hopper into a car, substantially as specified and for the purposes set forth.

"2. The combination of a fixed or stationary building, the tracks F and G, two or more elevating apparatus, a series of two or more elevator hopper scales having fixed or stationary hoppers, each having a valve or slide in its bottom, the discharge spouts PP, adapted and arranged for discharging the grain directly from said hoppers, respectively, into a correspondingly arranged car, a horizontal conveyor, the chutes

JJ, having therein the doors or valves K and L, and the slides or doors OO, all arranged substantially as shown and described, with relation to each other and for the purposes set forth."

A demurrer was interposed to the bill to the effect that the patent and both claims thereof were wholly void upon their face, for the want of patentable novelty and invention. This demurrer was sustained, and the bill dismissed. 40 Fed. Rep. 165. Thereupon plaintiff appealed to this court.

The case was argued with No. 311, *Richards* v. *Michigan Central Railroad Company*, and No. 312, *Richards* v. *Chicago & Grand Trunk Railroad Company.*

*Mr. Charles K. Offield* for appellant in all the cases.

*Mr. John W. Munday* for the Chase Elevator Company. *Mr. Edmund Adcock* was on his brief.

*Mr. George S. Payson* for the Railroad Companies.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

While patent cases are usually disposed of upon bill, answer, and proof, there is no objection, if the patent be manifestly invalid upon its face, to the point being raised on demurrer, and the case being determined upon the issue so formed. We have repeatedly held that a patent may be declared invalid for want of novelty, though no such defence be set up in the answer. *Dunbar* v. *Myers*, 94 U. S. 187 ; *Slawson* v. *Grand Street Railroad*, 107 U. S. 649 ; *Brown* v. *Piper*, 91 U. S. 37.

The patent in question is for the combination of, (1) a fixed or stationary building ; (2) two railway tracks ; (3) an elevating apparatus ; (4) elevator hopper scales, having a fixed or stationary hopper, provided with a valve or slide in its bottom ; (5) a discharge spout, arranged for discharging the grain directly from the hopper into a car.

The second claim has the same combination duplicated, with the addition of a horizontal conveyor ; the chutes JJ having therein doors or valves, and the slides or doors OO.

It is not claimed that there is any novelty in any one of the elements of the above combination. They are all perfectly well known, and if not known in the combination described, they are known in combinations so analogous that the court is at liberty to judge for itself whether there be any invention in using them in the exact combination claimed. We do not feel compelled to shut our eyes to a fact so well known as that elevators have, for many years, been used for transferring grain from railway cars to vessels lying alongside, and that this method involves the use of a railway track, entering a fixed or stationary building; an elevator apparatus; elevator hopper scales for weighing the grain; and a discharge spout for discharging the grain into the vessel. There is certainly no novelty in using two railway tracks instead of one, or in discharging the grain into a second car, instead of a storage bin or a vessel. Unless the combination accomplishes some new result, the mere multiplicity of elements does not make it patentable. So long as each element performs some old and well-known function, the result is not a patentable combination, but an aggregation of elements. Indeed, the multiplicity of elements may go on indefinitely without creating a patentable combination, unless by their collocation a new result be produced. Thus, nothing would have been added to the legal aspect of the combination in question by introducing as new elements the car from which the transfer was made; the engine that drew such car; the steam shovel; the engine that operated the shovel and the elevator; as well as the locomotive which drew the loaded car from the building, though these are all indispensable features, since each of them is an old and well-known device, and performs a well-understood duty.

Suppose, for instance, it were old to run a railroad track into a station or depot for the reception and discharge of passengers, it certainly would not be patentable to locate such station between two railroad tracks for the reception of passengers on both sides, and to add to the accommodations a ticket office, a newspaper stand, a restaurant, and cigar stand, or the thousand and one things that are found in buildings of

that character. It might as well be claimed that the man who first introduced an elevator into a private house, it having been previously used in public buildings, was entitled to a patent for a new combination.

Not a new function or result is suggested by the combination in question. The cars run into the building on railway tracks, as they have done ever since railways were invented. The building is fixed and stationary, as buildings usually are. It is no novelty that it should contain an elevating device, and that the latter should raise the grain to the hopper scale, and should discharge it either into a bin or a vessel, or into another car. In principle it makes no difference which.

In fact, the combination claimed is a pure aggregation, and the decree of the court dismissing the bill is, therefore,

*Affirmed.*