# IN RE HILL.

PATENTS; LACK OF NOVELTY; COMBINATION OF WELL-KNOWN ELEMENTS.

1. Where the elements of a combination sought to be patented are well known, and, if not known in the combination described, are known in analogous combinations, the court is at liberty to determine whether there is any invention in using them in the exact combination claimed.

2. Unless the combination of well-known elements accomplishes some new result, the mere multiplicity of elements does not make it patentable. So long as each element performs some old and well-known function, the result is not a patentable invention, but an aggregation of elements.

No. 305. Patent Appeals. Submitted November 16, 1905. Decided December 5, 1905.

HEARING on an appeal by the applicant from a decision of

the Commissioner of Patents refusing to allow certain claims in an application for a patent.                    *Reversed in part.*

The facts are sufficiently stated in the opinion.

*Mr. James B. Connolly, Mr. James H. Raymond,* and *Mr. Otto R. Barnett* for the appellant.

*Mr. John M. Coit* for the Commissioner of Patents.

Mr. Justice McComas delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents refusing to grant a patent including certain claims upon doors for railway cars to be used in shipping grain.

The Examiner, the Examiners-in-Chief, and the Commissioner of Patents successively rejected the claims now before us on appeal. These claims are sixteen in number, and they are limited to details of construction. The appellant has abandoned claims numbered 1, 8, 9, 17, and 20, and concedes that claims 2 and 3 are probably too broad. The decision of the Commissioner of Patents is affirmed in respect of these claims.

The remaining claims are:

"5. The combination with a car door, of a vertical guide rod, and connections between the car door and the guide rod, said connections comprising an arm mounted upon the door and extending outwardly therefrom, and opposite to the guide rod, said arm being provided with an eye, the center of which is arranged substantially opposite to the axis of said guide rod, a link engaging said eye, and a second link engaging said first link and engaging said guide rod.

6. The combination with a car door, of a vertical guide rod, and connections between the car door and guide rod, said connections comprising an arm secured to the door and projecting outwardly therefrom and opposite to the guide rod, said arm being provided with an eye, a round link engaging said eye, an elon-

gated link engaging said round link and slidably engaging said guide rod.

"7. The combination with a car, of a door comprising separable upper and lower sections, vertical guiding means mounted upon said car, slidable connections between the lower door section and the vertical guiding means, and vertically slidable connections between the guiding means and the upper door section, said last-named connections comprising an arm mounted upon the upper door section and provided with an eye, a link engaging said eye, and an elongated link engaging said first-named link and slidably engaging said guiding means."

"10. The combination with a door provided with a door opening, of guide rods mounted one upon each side of the door opening and rigidly secured to the car, each of said guide rods being provided with an upwardly inclined portion adjacent to its upper end, and with a shoulder extending backwardly from said inwardly inclined portion, slidable connections between the door and said guide rods, said connections comprising arms mounted upon the door, each arm extending outwardly from the door and opposite to a guide rod, and coengaging means, mounted upon the upper edge of the door and upon the car at the opposite edge of the door opening, adapted to automatically engage each other so as to form a hinged connection between the door and the car, when the upper door section is slidingly raised upon said guide rods.

"11. In a device of the class described, means for holding the free edge of the door adjacent to the roof of the car, said means comprising a hook secured to the roof of the car by a pivot, and provided with an arm extending adjacent to the upper face of the door in its supported position, and arranged to contact with said door only at one side of said pivot, said hook being cut away at the junction between said arm and the body of the hook.

"12. In a device of the class described, an attachment adapted to be pivotally secured to the roof of the car, said attachment being provided with a portion depending vertically from the center upon which the device is to be hung, a hook projecting from the lower end of said vertical portion, and an arm extending out-

wardly and above said hook, said attachment being cut away at the junction between the arm and the vertical portion.

"13. In a device of the class described, an attachment adapted to be pivotally secured to the roof of the car, said attachment comprising a vertical portion provided with a hook extending outwardly therefrom, and an arm extending outwardly above and opposite to said hook, said attachment being cut away at the junction between the arm and the vertical portion."

"18. The combination with a car, of a door, means for hingingly supporting the upper edge of the door adjacent to the roof of the car, and means for supporting the lower edge of the door adjacent to the roof of the car, said means comprising a hook provided with a deeply looped portion, the lower portion of said hook extending to form a tongue projecting beyond said looped portion, said hook being pivotally supported at one side of its center of gravity, so that the extended portion thereof will normally project in an upward direction.

"19. In an attachment for car doors, comprising an arm adapted to be rigidly mounted on a door, and provided with an eye having one side thereof flattened, and a link loosely engaging said eye and adapted to slidably connect said arm with a vertical guide for the door."

The device shown and described in the drawings and specifications is a grain door for railroad cars and attachments for connecting the door to the car. Such doors are attached to cars which may be alternately used to transport grain and other freight. When used for grain, the grain door must be used; when used for other freight, the grain door must be readily and securely disposed of so as not to impede or endanger workmen.

The door consists of an upper and a lower section, each connected, so as to slide, with vertical guide rods which are partly seated within rabbets formed in the door post. To facilitate the lifting of the door sections without binding upon the vertical rods, whether the door be lifted evenly or unevenly, the applicant has provided certain "shackle connections" between the door sections and the guide rods, which connections prevent the

door from binding on the guide rods and at the same time maintain such a relation between the sections of the door and its guide rods that the latter will hold the door in a vertical position in the uplifting of the door automatically without special attention or effort by the workman lifting the door. Because we are of opinion that the claims 6 and 7 do meet such requirements and to that extent mark an advance over the prior art, we decide that such claims should have been allowed by the .Commissioner of Patents. These claims read as follows:

"6. The combination, with a car door, of a vertical guide rod, and connections between the car door and guide rod, said connections comprising an arm secured to the door and projecting outwardly therefrom and opposite to the guide rod, said arm being provided with an eye, a round link engaging said eye, an elongated link engaging said round link and slidably engaging said slide rod.

"7. The combination, with a car, of a door comprising separable upper and lower sections, vertical guiding means mounted upon said car, slidable connections between the lower door section and the vertical guiding means, and vertically slidable connections between the guiding means and the upper door section, said last-named connections comprising an arm mounted upon the upper door section and provided with an eye, a link engaging said eye, and an elongated link engaging said first-named link and slidably engaging said guiding means."

Claim 5 is related to claims 6 and 7, but is too broad, and was therefore properly rejected.

Claim 10 covers the grain door made in sections and the old form of guide rods shown in the patent to Hill, No. 426,183. In addition, it includes hooks and eyes for supporting the upper door in an elevated position, and constituting a pivot whereon it turns. Similar hooks and eyes appear in the patent to Schroeder, No. 475,422. True, in Schroeder's construction the hook and eye may not automatically engage each other, but it is an old expedient to so shape the guide rods as to make similar hooks and eyes automatically engage, as in McGuire, No. 375,499.

applicant's automatic hinge is very like Schroeder's hook with McGuire's means of guiding.

Claims 11, 12, and 13 cover the applicant's supporting-hook intended to *reliably* support the free edge of the door adjacent to the roof of the car. It is claimed that the characteristic feature of this hook is the cut-away portion of the hook where the horizontal arm joins the body or vertical part of the hook. Where the hook and arm join, the metal is cut away.

The patent to McGuire, No. 375,499, those to Hill, No. 651,-438 and No. 613,273, and Schroeder's patent show hooks very like applicant's own hook. These claims were properly rejected.

Claim 18 covers applicant's second form of hook so shaped that its pivot is on the side next to the point of the hook. The purpose of having the weight on the side of the pivot opposite the open side of the hook is to cause it to engage automatically the door, and so remain. The difference between patents showing the same hooks with like functions and this hook is a slight variation only. This hook has a longer loop and a longer free end. The difference between it and the prior art is only a difference in degree.

Claim 19 specifies an arm rigidly mounted on a door and provided with an eye having one side thereof flattened and a link loosely engaging said eye, and adapted, by sliding, to connect said arm with a vertical guide for the door. The patents, Hill, No. 613,273, and McGuire, No. 606,170, show attachments having eyes of this form. The interposed link to connect with the vertical rods is not shown. The two patents to Hill, No. 426,183 and No. 651,438, however, show the expedient of such and eye in connection with a link attaching it to the vertical slide rod. The part of the attachment receiving the link is straight sided and accomplishes the same purpose in the same way. This claim was properly rejected.

Some of these claims thus disposed of make appropriate certain remarks of the Supreme Court in *Richards* v. *Chase Elevator Co.* 158 U. S. 302, 39 L. ed. 993, 15 Sup. Ct. Rep. 931, "It is not claimed that there is any novelty in any one of the elements of the above combination. They are all perfectly well

known, and, if not known in the combination described, they are known in combinations so analogous that the court is at liberty to judge for itself whether there be any invention in using them in the exact combination claimed. * * * Unless the combination accomplishes some new result, the mere multiplicity of elements does not make it patentable. So long as each element performs some old and well-known function, the result is not a patentable combination, but an aggregation of elements. Indeed the multiplicity of elements may go on indefinitely without creating a patentable combination, unless by their collocation a new result be produced."

In conclusion, we decide that claims 6 and 7 should have been allowed, and to that extent the judgment is reversed. We affirm the decision of the Commissioner of Patents in rejecting all other claims appealed from.

The clerk of this court will certify this opinion and the proceedings of the court in this cause to the Commissioner of Patents according to law.