## DAMROW BROS. CO. v. STOELTING BROS. CO.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1924.)

No. 3234.

1. Patents ⬥328—McKinnon, No. 735,133, for cheese press mechanism, held valid and infringed.

The McKinnon patent, No. 735,133, for cheese press, claims 1, 2, and 3, *held* not anticipated, valid and infringed.

2. Patents ⬥328—McKinnon, No. 828,421, for cheese press, held invalid on its face.

The McKinnon patent, No. 828,421, for cheese press mechanism, *held* void on its face for lack of invention.

3. Patents ⬥112(1)—No presumption of validity from issuance if invalid on its face.

While a patent carries with it a prima facie presumption of validity, that presumption does not hold if the patent is found to be invalid on its face.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Suit by the Stoelting Bros. Company against the Damrow Bros. Company. Decree for complainant, and defendant appeals. Affirmed in part, and reversed and remanded in part.

Clifford C. Bradbury, of Chicago, Ill., for appellant.

Casanave Young, of Milwaukee, Wis., for appellee.

Before BAKER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Appellant seeks to reverse a decree holding claims 1, 2, and 3 of McKinnon patent No. 735,133, granted August

4, 1903, and claims 1, 3, and 6 of McKinnon patent No. 828,421, granted August 14, 1906, to be valid and infringed by appellant. Appellant urges the invalidity of all the claims and noninfringement of claims 1 and 3 of patent No. 828,421.

In the cheese-making art there were many inventions, from 1840 to 1894, when Feldmeier procured his patent No. 529,856, so strongly relied upon by appellant as anticipating the first McKinnon patent.

Both McKinnon and Feldmeier used old and common forms of cheese presses, to which each, in turn, applied his devices. To understand what is claimed to be the advance in the first McKinnon patent over the Feldmeier invention, it must be known that in the art of cheese making the ordinary whey must be squeezed out, but that there is a so-called white whey, rich in butter fats, which it is desirable and necessary to retain in the cheese. To accomplish this, the initial or direct pressure is arrested at a given point before the white whey is started and until it is set. Then the pressure made by the settling weight of the cheese press is applied. While this important fact is described by Feldmeier in his testimony, and while he says that he and his associate arrested the initial pressure by holding up the loose end of his press by means of a block and tackle, yet that feature was never incorporated in his invention, and does not seem to have been adopted in practice in the use of any press prior to the advent of the McKinnon invention.

In most forms of the Feldmeier invention, Feldmeier raised the loose end of his press by the force of the compression of the cheeses, placed between the movable head block and the automatic pressure block. In another form of his machine, instead of forcing up the loose end of the press, as above described, he raised it with a block and tackle until the cheeses were interposed between a fixed immovable block and the automatic pressure block (Fig. 12). Thereupon the tackle was released and the automatic and the only pressure was the settling weight of the press.

Both Feldmeier's testimony and the specifications in his patent show that he did not consider the block and tackle as an essential part of his invention. It was merely used in illustrating Figure 12, wherein the only way of raising the loose end of the press so as to insert the cheeses was by means of the block and tackle. Feldmeier had no "means" by which he could arrest or stay the initial or direct compression at a given point until the white whey was set, and then continue the compression by the settling weight of the press.

[1] McKinnon, in No. 735,133, used an old form of box or trough into which the cheeses were put between two pressure heads, one at each end of the trough. One of the pressure heads was carried on a screw, by means of which the initial or direct compression was applied. During that initial or direct compression the loose end of the trough was held up by an arrangement composed of standards, bell crank levers and links. The other ends of the links carried nuts. By means of that mechanism the loose end of the trough could be raised, lowered, or held in a given position.

The difference between the Feldmeier patent No. 529,856 and the McKinnon patent No. 735,133 is clear. In the Feldmeier forms 12

and 13 there was but one compressing force, namely, the settling of the loose end of the machine. In the other forms, there was a double compressing force, one by means of driving the head block towards the automatic pressure block through a hand-turned screw or other device, and the other by settling of the loose end of the press, but both compressing forces worked together and at the same time. In the McKinnon invention there were two compressing forces, but the one followed the other, and by means of that arrangement McKinnon accomplished a vital thing in cheese making and an important advancement in the art.

The McKinnon claims may not be read upon the Stone patent No. 2747, or upon any other earlier patent.

The claims are valid; infringement is conceded.

[2] Other than the patent itself, the only evidence touching McKinnon patent No. 828,421 are two sheets, one from appellant's catalog and one from the catalog of Burrell & Co. of Little Falls, N. Y., and two patents, Armstrong No. 685,811, November 5, 1901, for lifting jack, and Naylor, No. 222,724, December 16, 1879, for gang cheese press.

Claims 1, 3, and 6 are here involved. In claim 6 the lever carries but one pawl; in claims 1 and 3 the lever carries two pawls. By lifting by hand one pawl, so that a spur on one fits into a notch on the other, they are kept out of engagement with the rack bar. That is a hand operation and not patentable. It is also anticipated in the Armstrong lifting jack. If there is any invention shown in either claim, it was accomplished by adding to a cheese press the rack and pawl feed. It obviously performs the usual and ordinary functions of a combined rack, lever, and pawl, or pawls; namely, the raising or advancement of some part of the attached mechanism. But it is urged, in argument, that its use shows an advancement in the art in two ways over the screw used for the movement of the presser head in McKinnon No. 882,792:

"It enables a skilled operator to apply the desired maximum direct pressure, and at the same time eliminates the possibility of too great a pressure, which would result in starting the 'white whey.' "

There is nothing in the record to support such an argument, unless the mere comparison of the "rack and pawl feed" with the "screw feed," based on our common knowledge of each, compels conviction that the pressure exerted can be more accurately gauged by the use of the former. We are of opinion that the exact reverse is true. It must be perfectly apparent that the presser head could, with the screw, be advanced the width of a hair, but with the ratchet the advance would have to be the full width of a tooth on the ratchet bar.

It is urged also that—

"Great economy in time is effected by the provision for holding the pawls out of engagement."

If this unsupported argument be true, we have seen that it is an anticipated, unpatentable, hand operation.

[3] An applicant for a patent can have no protection unless the supposed improvement involves actual invention or discovery. Dunbar

v. Meyers, 94 U. S. 187, 199, 24 L. Ed. 34. While a patent carries with it a prima facie presumption of validity, yet that presumption does not hold if the patent is found to be invalid upon its face. Richards v. Chase Elevator Co., 158 U. S. 299, 301, 15 Sup. Ct. 831, 39 L. Ed. 991; Sodemann Heat & Power Co. v. Kauffman (C. C. A.) 275 Fed. 593, 595; De Vry Corporation v. Acme Motion Picture Projector Co. (C. C. A.) 262 Fed. 970, and cases there cited.

We are of opinion that McKinnon patent No. 828,421 is invalid upon its face.

The decree as to patent No. 735,133 is affirmed, and as to No. 828,-421 is reversed and remanded, with directions to find the patent invalid; each party to pay half the costs in this court.