## HAWIE MFG. CO. v. HATHEWAY MFG. CO. et al.

Circuit Court of Appeals, Second Circuit.
May 13, 1929.

No. 169.

Merrell E. Clark, of New York City, for appellants.

F. P. Warfield and Lawrence Bristol, both of New York City, Christian M. Newman, of Bridgeport, Conn., and C. A. L. Massie, of New York City, for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. Both patents involved in this suit relate to buckles used as hose supporters.

The complainant, to which we shall refer as Hawie, and the Hatheway Manufacturing Company, to which we shall refer as Hatheway, are competing manufacturers of these buckles.

### The Hawie Reissue Patent, No. 15,982.

This patent was held by the District Court to be valid and infringed. But Hatheway had manufactured a so-called "rustless buckle," and sold it in large quantities from 1913 to 1920. The term "rustless," as applied to a garter, means that the elastic webbing with which the garter is used is so arranged as to overlie the back face of the buckle, so as to be between the buckle and the flesh or underclothing of the wearer. This arrangement protects the metal from body moisture and renders it "rustless."

In adjusting the webbing in such buckles, it is necessary to secure one end of it to the buckle. This was long done by sewing the end of the web. Hatheway's 1913 device, however, was a "rustless" buckle that required no sewing. As appears from Exhibit K, Hatheway fastened the end of the web in his 1913 buckle by pushing it under anchor teeth cut along the edge of the back of the frame, which were then swedged down to clamp the webbing against the frame.

The only difference between this 1913 de-

vice of Hatheway and that of the Hawie reissue patent is that the former is without any so-called "stop." In the reissue patent the anchorage for the end of the web, instead of being a mere serrated edge along the back of the frame under which the webbing is pushed, is a series of V-shaped teeth struck up from the body of the frame and extending upwardly and forwardly therefrom. Adjacent to the triangular openings created by striking up these anchor teeth are portions of the sheet metal integral with the rest of the back, which form a stop that prevents the web, when pushed under these teeth that are swedged down upon it, from protruding through the opening in the frame, as was possible in Hatheway's 1913 buckle. The specification of the Hawie reissue patent states that:

"The integral portion *10'* left adjacent the sides of and between the teeth generally strengthens the structure, rendering it more rigid and prevents the two-edge portions from spreading, and particularly serves as a stop which prevents the end of the web, when inserted, from protruding through the opening and coacts with the teeth *10* in clamping the web and maintaining it firmly secured."

To widen or thicken the metal frame, so as to strengthen the structure, if the cutting away of the metal adjacent to the teeth in Hatheway's 1913 device rendered the buckle less durable than it should be, would hardly seem to require invention. Defendant's witnesses said that no trouble had been experienced in the 1913 buckle from the end of the webbing slipping through the slot. Complainant's witness Lations, however, said that the webbing in the Hatheway 1913 buckle would be likely to slip through the slot in the frame, because no stop was provided; but no evidence to this effect was offered that was based on any definite experience in commercial use of the buckle.

But, if a stop such as Hawie's reissue patent shows be thought important, this very anchorage was disclosed in the clamping teeth of United States patent No. 865,554, to Abizaid. The United States patent No. 507,705, to Adams, likewise disclosed a similar method of clamping the end of a web to a buckle by striking a series of V-shaped teeth from the body of the frame and turning them back over the end of the web.

■ The reissue patent seems to involve no more than the substitution of the anchor teeth of Abizaid and Adams for the clamping teeth of the 1913 Hatheway buckle. To employ the Abizaid method of anchorage in the 1913 Hatheway buckle seems too slight a step to involve invention. Every element in the combination of the reissue patent is used in the same art, and in the same manner as in the prior art. This is not a patentable combination. Richards v. Chase Elevator Co., 158 U. S. 299, 15 S. Ct. 831, 39 L. Ed. 991; Grinnell Washing Machine Co. v. Johnson, 247 U. S. 426, 38 S. Ct. 547, 62 L. Ed. 1196. It seems especially true that invention is lacking when the advantage of the reissue patent over the 1913 Hatheway device is little, if anything, more than such as may be due to strengthening the buckle by employing a wider bar of sheet metal in the frame of the buckle than Hatheway used. If a stop was so important, it is strange that Hatheway should be now selling Exhibit 6 in competition with complainant, in which no stop is found necessary.

## The Hawie Second Patent, No. 1,497,273.

This patent has the same clamping teeth as are shown in the reissue patent already discussed. The improvement consists in the mounting of the lever member. When this member in the reissue patent is closed, it clamps the web against the back plate, whereas in the second patent it deflects the web over the top edge of the back plate. The lever in the second patent is, moreover, pivoted on a bar, and not, as in the reissue patent, in the openings of two struck-up ears. The second patent is said to provide a thinner, flatter buckle than the reissue patent, and it does away with the ears of the reissue patent and of the earlier Hatheway buckle of 1913, which tended to catch on the clothing of the wearer.

But the Goerdes United States patent No. 897,734 discloses a lever mounting apparently identical with the supposed novel features of the Hawie second patent. In the Goerdes patent the lever member is pivoted on a bar, and when closed deflects the web over the top of the back instead of against the back of the frame. This Goerdes patent was not before the Patent Office when the Hawie second patent was allowed.

■ The lever mounting of the Hawie second patent and of the Hatheway alleged infringing device, Exhibit 6, involved an undoubted improvement over their former buckles, but they were never free to use this lever mounting until March 19, 1924, when United States patent No. 847,811, to Peller, expired; for such a lever mounting in a rustless buckle was covered by claims of the Peller patent, which had been sustained by this court in Waterbury Buckle Co. v. Aston, 183 F. 120,

and "was avoided by other manufacturers until its expiration." Record, page 65. After the Peller patent expired, Hawie began to use this lever mounting in connection with the clamping teeth, which he shows in his reissue patent, and Hatheway began to employ it in connection with clamping teeth essentially like those he had used in his 1913 buckle, which had no bridge or stop. Both followed Goerdes by pivoting the buckle lever on a bar and by deflecting the web over the top edge of the back plate. The combination of the Hawie reissue patent with the lever of Goerdes was not in our opinion invention. It was an obvious step, which would doubtless have been taken sooner, had not the Peller patent stood in the way.

The argument based on commercial success is pressed as to both patents, and met with favor in the trial court. The buckle of the reissue patent was for obvious reasons preferred to the old sewed buckle, which had been used by Hawie before. We are not satisfied, however, that the stop which distinguished it from the Hatheway 1913 buckle, and has now been abandoned by the defendant, was a cause of its success. The large sales of the buckle made under the second patent are explained by the expiration of the Peller patent, and the use of the Peller and Goerdes lever, which prior to such expiration was unsafe.

The decree is reversed, and the cause remanded, with direction to dismiss the bill as to each patent for invalidity, with costs to the defendants.