**LANTZ et al. v. MORRIS et al.**

**MORRIS et al. v. LANTZ et al.**

Circuit Court of Appeals, Eighth Circuit.
May 18, 1929.

Nos. 8176, 8179.

Guy A. Miller, of Des Moines, Iowa, for Lantz and Hites.

W. P. Bair and Will Freeman, both of Des Moines, Iowa (Bair & Freeman, of Des Moines, Iowa, on the brief), for Morris and others.

Before STONE, LEWIS, and COTTERAL, Circuit Judges.

LEWIS, Circuit Judge. The defendants below, Lantz et al., appealed from a decree that adjudged Claims 3, 5, and 6 of combination patent No. 1,590,982, issued to E. B. Morris for a farrowing house valid, and that further adjudged the houses sold and used by defendants involved the combinations of Claims 3, 5 and 6 and enjoined further infringement of said claims. The plaintiffs below appealed from the decree, assigning error that it adjudged Claims 1, 2, 4 and 7 of said patent invalid.

The house called for in the patent is intended for sows and their young pigs. Its economical construction and arrangement into separate pens is illustrated by the floor plan for six sows and their litters, in Fig. 1 of the patent drawing, thus:

The six central triangular enclosures there shown are pens for six separate litters, so that they may go in and out at will from the outer adjoining enclosure for the sow, the partition between the two being carried so low that the sow cannot enter the small pens for the pigs. By the use of a stove or lamp

placed at the center and above the floor of the six small pens, with a hover or reflector above the source of heat, the small pens may be kept warm. It is said, and the proof tends to show, that the pigs are attracted into the small pens away from the sow after they have been suckled, by the warmth. This serves two purposes, the pigs will not then be lain on or trampled on by the sow and the warm central pens will prevent loss of pigs in cold weather.

Claim 3, which is like 5 and 6, reads:

"3. In a farrowing house, the combination with a building structure having a roof, floor, and side-walls; of a plurality of vertical posts spaced about a central point in said building structure, partitions extending from said posts to the side-walls to form a plurality of main pens, cross-partitions extended between the adjacent posts to form the inner ends of said main pens, a heating means arranged within the polygonal space defined by said cross-partitions, and low partition members dividing said polygonal space adjacent the floor into a plurality of compartments adapted to be warmed by the heating means, the cross-partitions terminating above the floor whereby to form openings of restricted height connecting the main pens and the respective heated compartments."

Non-invention and anticipation were pleaded in the answer. All of the elements of the combination are old. Prior patents had issued for pig farrowing houses and chicken brooders with means for keeping them warm by using stoves or lamps, but none of these patents called for or suggested the combination of the patent in suit, that is, the means by which the small pigs were instinctively drawn away from the sow, a place of danger, and to a place that protected them from cold. This is the distinctively new and useful advance that others had sought but had not discovered. In poultry brooders, as in Norton Pat. No. 1,120,738, which is the nearest approach, the one object was protection from cold by a central heater— no thought of means of protection from other dangers, as here. A new combination of old elements which produces a new and useful result or attains an old result in a better, cheaper or more efficient way is patentable. Ottumwa Box Car Loader Co. v. Christy Loader Co. (C. C. A.) 215 F. 362; Detroit Motor Appliance Co. v. Burke (D. C.) 4 F. (2d) 118; Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241.

The master found, and there was evidence to support him, that owing to long cold winters in the Northern States only one litter of pigs could ordinarily be raised in a year without artificial means of protecting them in the winter months, and that aside from protection against cold some of them were trampled upon or lain upon by the sow, so that the average of a litter raised was not more than six, that the use of the Morris house enabled the raising of two litters a year and that the number of pigs raised of each litter exceeded eight. He said:

"The great merit of the house is that it provides a method for giving the small pigs the increased heat which they desire while permitting some heat, but in a less degree, for the sow. In the house in question it is easy to give the small pigs the temperature of 72 degrees in any weather, while the pens for the sows have a temperature between 30 and 40 degrees. The heat in the Morris house is away from the sow, so the pig is induced to leave the sow and seek the greater heat, thus freeing the pig from the dangers of being trampled on and killed by the sow. Under the system of housing, such as the one in question, out of an examination made of 400 houses, the average of pigs saved per litter exceeded eight pigs, while under the old system six pigs once a year was considered doing well. This results in a difference in a year of sixteen pigs as against five or six. The essential reason back of this is that under the old methods there was no plan of saving the pigs farrowed before the latter part of April in this climate, with the result that the sow farrowed in the latter part of April, May or June, and this litter raised and the sow rebred again it was so near the cold weather that the last litter of pigs usually died from exposure to the weather incident to this climate. Those using the Morris plan house find that the natural time of farrowing is in the months of February and August or September. The problem of overlying or trampling of the little pigs is cared for in the fact that the heat generated in the center passes along the metal hover and then comes to the wooden walk which is a part of the hover and passes under that until it meets the division partitions. It is then deflected down along these division partitions until it comes to the openings made for the little pigs to enter. The small pig in moving around in the pen with the sow comes in contact with the whiff of warm air coming out of the opening in the small pen, and the instinct of the young animal leads it to seek the heat and it passes toward it and under the partition and into the part arranged for the little pigs. It is away from the sow and away from the chilling and in no danger of being

trampled upon. * * * One of the difficulties in the construction of hog houses for farrowing has been to provide a place for the little pigs with a greater amount of heat separate and distinct from the place for the mother hog with a less degree of heat, which is one of the things sought and realized in the house under the Morris plan."

The Morris house went into immediate use, its sales have gradually increased and were constantly being extended into northern sections. The proof in the case, the findings of the master and the court as to the three claims, coupled with the presumption due to the issuance of the patent, lead us to the conclusion that the judgment of the court as to the three claims should be affirmed.

The only differences we find between the three claims adjudged valid and the four claims adjudged invalid are, the three claims use—the four do not—the word "combination"; the three claims specifically call for a roof, a floor and side-walls in the combination, and the four do not; but the four claims use the phrase "In a farrowing house," or, "In a structure of the class described," and show that each of the seven claims is but a difference in verbiage in describing the same invention. Each calls for a house or structure of the class described. This is also made certain by the specification and drawings. The invention is thus fully described, we think, in each claim; so much so that to hold one or more valid and others invalid would be a seeming contradiction.

In Cause No. 8176 the decree in adjudging Claims 3, 5 and 6 valid and in finding infringement is affirmed.

In Cause No. 8179 the decree in adjudging Claims 1, 2, 4 and 7 invalid is reversed, with directions to set the decree aside in that respect and enter a decree adjudging those claims valid also, and infringed.

COTTERAL, Circuit Judge (dissenting). I dissent for the reason that the patentee did no more than assemble old elements and no new result was attained to any extent. The practice of protecting young pigs from cold by artificial heat and separating them from the sows to avoid trampling is undeniably very old. It is illustrated more familiarly in the raising of chickens where brooders and coops are used. It is certainly no discovery that a brood or litter will by instinct be attracted to a place of warmth and that trampling is reduced by separating the apartments. This led to the common method of providing heat and a refuge for the young.

Doubtless this farrowing house is a convenient aggregation in one structure of the ordinary means taken to increase the litters and save the pigs. It accounts for the popularity of the enterprise. But the most that can be said of it is that mechanical skill has been employed to bring together old elements but with no possible difference in the result. The cases which hold such a patent invalid are too numerous for citation. See Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U. S. 426, 38 S. Ct. 547, 62 L. Ed. 1196; Richards v. Chase Elevator Co., 158 U. S. 299, 15 S. Ct. 831, 39 L. Ed. 991; Concrete Appliances Co. v. John E. Gomery et al., 269 U. S. 177, 46 S. Ct. 42, 70 L. Ed. 222.