**GIRARD TRUST CO. et al. v. SCHWARTZ–GILBERT CO., Inc., (RENSTROM, Intervener).**

District Court, S. D. New York.

Aug. 10, 1940.

Samuel M. Amster, of New York City (Charles M. Palmer, of Washington, D. C., and John W. Dickerson, of Philadelphia, Pa., of counsel), for plaintiff.

Hornidge & Dowd, of New York City (William M. Cushman and John W. Malley, both of Washington, D. C., of counsel), for defendant and intervener.

CONGER, District Judge.

This is a patent infringement suit based upon patent No. 1,589,248, issued June 15, 1926, to one Augustus H. Sexton, who, before the issuance thereof, had assigned the entire right, title and interest to one David L. Short. After the death of David L. Short, said letters patent passed to the executors of his estate, Girard Trust Company, and Sadie A. Short. Thereafter the executors, for a consideration, transferred the exclusive license of the patent to one Ethel L. Jackson, who thereafter conveyed said license to West Electric Hair Curler Corporation, and the latter, for consideration, transferred this license to Hair Net Packers, Inc., which subsequently changed its name to Solo Products Corporation, one of the plaintiffs herein.

The action was originally brought against Schwartz-Gilbert Co., Inc., which is a customer of Carl W. Renstrom, manufacturer of the alleged infringing article. The latter, doing business as Tip-Top Products Co., of Omaha, Nebraska, intervened as a party defendant.

The Sexton patent discloses a hair curler comprising a hollow curler rod; a clamp bar provided with spaced ears pivotally straddling the curler rod; a swingable loop with two retaining rods, having obtuse-angled hinged portions at one end, and two obtuse-angled or latch portions on the opposite closed end thereof. The latching or locking closed end of the loop has the axle integral with the retaining rods, and a freely revoluble locking spherical ball cooperating with one end of the curler rod.

The defendant's Tip-Top Curler performs the same function and operation as the plaintiff's hair curler, but the retaining rods are in a horizontal plane, while plaintiff's are in a vertical plane; and defendant's locking device is a flat rubber octagonal disc, while plaintiff uses a spherical roller or ball.

The art of hair curlers is very old, and for many years substantially the same combination of elements as here present has been used, that is, to clamp the end of a tress of hair, to wind the hair on a cylindrical curler, and then lock the curl so wound on the curler until its sets in the desired form.

The defendant has set up prior patents in its answer which were introduced at the trial, as anticipatory of the patent in suit. From these earlier patents, a summary of which will aid in the discussion of the patent in question, we find the following: the Wertsbaugher patent No. 473,101, (1892) showed a hollow curler rod and a clamp bar having ears extending on opposite sides of one end of the curler rod which ears are hinged to the rod by retaining rods. A later patent, the Neumann, No. 546,898 (1895) used practically the same combination, with retaining rods of substantially bowed form, but with a locking means in the form of a spring pressed plunger. The British patent to Hulbert No. 10,910 (1896) also used the same combination having bowed retaining rods which snap in over the end of the curler. The British patent to Leoboldti, No. 13,432, (1894) used substantially the same combination of hollow curler rod, and bowed retaining rods which were locked over the curl by, a spherical roller which snaps in to the end of the hollow curler rod. Whether this latter British patent was known to the Patent Office, I cannot say, but in any event it was not cited against Sexton's patent application, although undoubtedly directly connected with it.

Foreign patents are of just as much force and effect as domestic patents, in constituting an anticipation of a patent. Hodderson-Balling v. Lorenz & Kussat, 2 Cir., 60 F.2d 709, and cases therein cited.

When Sexton applied for his patent he presented six claims, five of which are practically alike and generally claim a hair curler and waving device including a curler rod provided with a clamp to secure a hair strand thereon, and a retaining rod hinged to the curler rod adjacent to one end and having a locking device to engage the opposite end of the curler rod.

These claims, one to five, inclusive, generally described as above, were rejected by the patent examiner, by reason of the Wertsbaugher patent, 473,101, 4/19/92, 132–41, and the Neumann patent, 546,898, 9/24/95, 132–41. Sexton acquiesced in these cancellations and contented himself with the sixth claim which contained the same elements, but with certain additional specifications which are "two retaining rods having each a relatively obtuse-angled latch portion on one end, and a relatively obtuse-angled hinge portion on the opposite end thereof * * *, and a spherical roller arranged on the axle to be carried thereby partially into the opposite end of the hollow hair curler rod."

The invention, if any, must be restricted to the form shown and described by the patentee. Duff v. Sterling Pump Co., 107 U.S. 636, 2 S.Ct. 487, 27 L.Ed. 517. As I see it, this leaves the plaintiff's claim limited to the aforesaid obtuse-angled portions of the retaining rods and the latching means described in claim number six.

As far as the other elements are concerned I am satisfied that they come within the prior art and that the same combinations of elements have been used for many years; for instance, the hollow curler rod; a clamp bar having ears extending on opposite sides over one end of the curler rod; and retaining rods. They all perform the same function as plaintiff's device, that is, to clamp the hair, wind it on the curler, and lock the curl on the curler so that it would remain there until it was set.

These functions are all covered by the Wertsbaugher, Neumann, Nielson patents, as well as others which have been brought to the attention of the court, all of which were prior to the Sexton application.

Thus the Sexton patent cannot be considered a pioneer in the hair curler inventions, and the novelty of it must reside in some improvements over the prior patents, mentioned above. As it appears to me, if the Sexton patent is to be held valid, and if there is any novelty in the Sexton device, it must be by reason of the so-called latching at the end, and/or the so-called obtuse-angled portions of the retaining rods hereinbefore mentioned.

I will first take up the question of the latching device, or the "spherical roller". This means of latching or locking, that is, by means of a spherical roller, was old in the art. It is found in the aforesaid British patent to Leoboldti (defendant's exhibit 9). In that patent, and the illustrations contained therein, there is a hair curler described consisting of· retaining rods being locked over the curl by the spherical roller which snaps in to the end of the hollow

curler rod. Inasmuch as this is important, I quote from page 3 of Leoboldti's patent, as follows:

"Instead of employing a piece of elastic material, I may use a metallic closing device or fastening as shown in Figs. 14 to 17 inclusive. The pin illustrated in Figs. 14 and 15 consists of a hollow tube 14 of wood, metal or other suitable material of any convenient shape and dimensions. This tube is formed at one end with a ball 15, or a ball may be fixed or attached to the said end of the tube. A metal loop 16 passes through the ball 15 and is provided with a ball 17. The elasticity of the metal loop is sufficient to allow of its being caused by a slight effort to assume the position shown in Fig. 14, in which position the ball 17, being made to enter to a slight extent into the tube 14, keeps the pin closed. Fig. 15 shows the pin wide open. In order to use this pin, the hair is wound on the tube 14, while the pin is open (Fig. 15), after which the loop 16 is turned around into the position shown in Fig. 14 so as to engage the tube 14.

"The loop 16 is made of any suitable material, but preferably of metal, iron or steel which may be nickel-plated. It may be made in a variety of shapes or sizes, in cross-section for example, round, square or flat."

Therefore, I conclude that this spherical roller method of latching was not new or novel, but was old in the art and that there was no novelty in plaintiff's locking device on his hair curler. Whether or not this latching device is a metal spherical roller or a rubber ball is of no consequence. There is no fundamental difference between them.

This brings us directly to the question of the obtuse-angled portion of the retaining rods, which is all that is left by way of novelty in the Sexton patent.

One of the main purposes of the obtuse-angle is to give greater elasticity to the retaining rods. I see no great difference between the so-called obtuse-angle in this respect and the right angle shown in the Nielson and the Leoboldti patents. If the Leoboldti device was actually being used with hair between the retaining rods, there is no question but that the right angle in that device would become an obtuse-angle. I see no great difference between the right angle and the obtuse-angle. Neither do I see any great difference between the retaining rods of the Sexton device and the retaining rods of the patents hereinbefore mentioned. As a matter of fact, the plaintiff, in his claim that the bowed retaining rods of the defendant infringes his so-called obtuse-angled retaining rods, must stand by the consequence of such claim. In other words, if the bowed retaining rods of defendant infringes the obtuse-angled retaining rods of plaintiff, then plaintiff's so-called obtuse-angled retaining rods are similar to the bowed retaining rods of the prior patents hereinbefore referred to. An examination of defendant's retaining rods and the retaining rods in some of the prior patents show them to be practically identical.

Plaintiff has attempted, by testimony, to read into the bowed retaining rods of defendant's device obtuse-angles similar to the so-called obtuse-angle of the Sexton patent, as part of the claim of infringement. If that be so, and if those angles are formed in defendant's device, then the same obtuse-angles are found in the retaining rods of the Wertsbaugher, the Neumann, the Leoboldti, the Brown and the Hulbert patents. The same tangent could be drawn from the obtuse-angle of any of the above patents as the plaintiff attempted to draw in imposing obtuse-angles on defendant's retaining rods.

What Sexton has apparently done is to take various features from devices patented prior to the granting of his patent, and to incorporate them into a hair curler, but which various features were old in the art, the property of the public, and which anyone might use, but which use thereof would not entitle the user to a patentable invention.

Any patented device, all of the elements of which are old and each of which performs the same function taught by the prior art, fails as an invention. Benjamin Electric Co. v. Bright Light Reflector Co., Inc., 7 Cir, 111 F.2d 880, 882, and cases therein cited. To bring about the particular association of old forms of these elements is aggregation and not invention. Wreal Cravat Holder Co., Inc., v. Lordds, Inc., 2 Cir., 87 F.2d 313; Richards v. Chase Elevator Co., 158 U.S. 299, 15 S.Ct. 831, 39 L.Ed. 991.

I therefore hold that, by reason of the above, the Sexton patent is invalid for lack of invention.

The bill of complaint should be dismissed; and judgment entered for the defendants.

The defendant's attorneys should submit to me, through the clerk's office, simple findings of fact and conclusions of law, for my signature. A copy of the proposed findings should be served on the attorneys for the plaintiff at least five days before the date of settlement. I suggest that plaintiff's counsel, if he be so disposed, submit, on two days' notice, criticisms of the proposed findings, as counter-findings will avail him nothing. The findings should be triple-spaced, and typewritten, so that I may readily make any necessary changes on the copy submitted.