## MURDOCK v. MURDOCK.

No. 5876.

United States Court of Appeals
Fourth Circuit.

Argued June 15, 1949.

Decided July 29, 1949.

Paul B. Bell and Paul B. Eaton, Charlotte, N. C., for appellants.

Channing L. Richards, Charlotte, N. C. (Parrott & Richards, Charlotte, N. C. and C. B. Winberry, Statesville, N. C., on the brief), for appellee.

Before PARKER, Chief Judge, and DOBIE, Circuit Judge, and CHESNUT, District Judge.

DOBIE, Circuit Judge.

This is an appeal by the patentee-plaintiff from a judgment of the United States District Court for the Western District of North Carolina, which granted the defendant's motion for summary judgment and dismissed plaintiff's civil action for patent infringement on the ground that the patent in suit was invalid and the further ground that the claims of the patent were not infringed by the accused device manufactured by the defendant.

The patent in suit, Murdock patent number 2,182,485, according to the first sentence of its specifications, "relates to a seat for what is commonly known as a kitchen chair." And the second paragraph of the specifications thus describes the subject-matter of the patent: "It is an object of this invention to provide a chair having form fitting refinements adapted for comfortable relaxation by the occupant, which chair is durable, economical to manufacture, and which has an appeal to the critical eye. More specifically it is an object of this invention to provide a chair seat having a double curvature therein comprising a pair of substantially parallel arcuate rungs which have secured to the upper side thereof a plurality of transversely extending arcuate slats. This assembly, comprising the rungs and slats, is adapted to be placed on the top rounds between the chair posts. By providing arcuate rungs and arcuate slats, the curvature of the seat extends in both directions and throughout the width and breadth thereof. In other words, the shape of the seat is substantially spherical at the central portion thereof."

There are four claims in the patent and Claim 3, which is fairly representative, reads: "3. A chair having a pair of front posts and a pair of rear posts, a seat member supported by the posts and comprising a pair of arcuate members disposed transversely of the chair and having their concave surfaces disposed upwardly, a plurality of arcuate slats having their convex sides secured to the concave upper surfaces of the arcuate members to form a seat having an upper surface which is concave in both transverse and longitudinal section."

This is a combination patent. Elementary in patent law is the distinction (easy to state but often difficult to apply) between a combination which is patentable and a mere aggregation which is not. We discussed this distinction at some length in the recent case of City of Grafton v. Otis Elevator Co., 4 Cir., 166 F.2d 816. In the light of that discussion, we have little hesitation in holding (as did the District Court) that the patent in suit falls clearly into the category of a mere aggregation that is not patentable, and is, therefore, invalid.

The essential elements of the Murdock patent may be very simply stated. These are: (1) Reversely curved arcuate slats, running from the front to the back of the chair seat; (2) Arcuate rungs positioned

across the front and back of the chair seat, to the upper concave surfaces of which rungs the arcuate slats are secured; (3) A produced result of a curvature of the chair seat in both directions, throughout the breadth and depth of the chair seat, so that this seat at the centre is substantially spherical in form.

Counsel for patentee freely admit that element (1) (reversely curved, arcuate slats running from the front to the back of the chair seat) is very old in the prior art. These same counsel also admit the clear antiquity of element (3) (the result produced, the double curvature of the chair seat); so that their claim of patentability is reduced to the second element. Admitted, too, is the fact that the patent is in no sense revolutionary and that "the prior art in the field of chairs is crowded." Just how crowded is this field is evident from a mere enumeration of prior patents in the field, disclosing elements strikingly similar to those of the patent in suit.

Thus the Buckel patent (1868), No. 85,363, has "front and rear cross bars," in the nature of arcuate rungs. In the Jones patent (1931), Des. No. 85,182, transverse arcuate rungs provide widthwise curvature in a wicker chair seat. And very close to the Murdock patent is the Debski patent (1929), Des. No. 79,283; for Debski has both the double curvature and the two transverse arcuate rungs. Indeed, the only differences here are that Debski's rungs are made of a different material from those of Murdock, and the two Debski rungs are placed one in front of, and one just back of, the centre of the chair seat, while Murdock has positioned his rungs one at the front, and one at the rear, of the chair seat. In both Debski and Murdock, the slats (running from front to rear) rest upon the concave surface of the transverse, arcuate rungs. Compare, too, the McKee patent (1932), No. 2,011,067 with "slats of wood so placed as to give resiliency and so formed as to comfortably fit the form of a person using the chair," and the suggestion "a cushion shaping itself to the flexible 'saddle curves' in the seat might be used;" the Bergstrom patent (1927), Des. No. 76,980; the Bruen-

ing patent (1935), No. 2,028,823; the Lucas patent (1934), Des. No. 94,089, and particularly the Trudo patent (1931), No. 1,827,124. Models of ancient stools and more modern Chippendale chairs are strikingly similar to Murdock.

In the light, then, of the prior art, Murdock has produced an old result (double curvature of the chair seat) through old means (curved slats positioned on the concave surface of transverse arcuate rungs). Surely, under these circumstances, there is nothing patentable in Murdock's merely altering the position of the arcuate rungs. At best, Murdock discloses only a non-patentable aggregation with only slight and non-essential variants from chair seats long known in the art. His chair seat may be (as his counsel assert) cheaper, better looking and more comfortable than those of his predecessors in this field; but much more than these attributes is needed to satisfy the concept of patentability.

Said Circuit Judge Parker, speaking (with an elaborate citation of authorities) for our Court in Young v. John McShain, Inc., 4 Cir., 130 F.2d 31, 32: "We agree with the court below that none of the claims is valid but that all cover mere aggregations of devices, which were old in the art of steel-concrete construction, and which perform in the aggregation merely the functions which they performed in the prior art, without any new effect or resultant from their having been brought together. It is well settled that invention cannot be predicated of such aggregation of old elements even though their bringing together may have resulted in a useful product."

Of like effect is the statement of our Circuit Judge Soper, in Bulldog Electric Products Co. v. General Electric Co., 4 Cir., 105 F.2d 466, 468: "It remains to consider whether the particular structure which Kempton devised amounted to invention. It is apparent that it comprised little that was not familiar to the art, and that its claim to ingenuity depends upon the peculiar form of the anchor plate described in claim 3 as a metal plate 'secured to the rear of said base and having a portion extending forwardly at right angles to the

base to form an end wall for the receptacle, (and) an opening in the portion of said anchor plate extending forwardly through which conductors may pass and be secured to said anchor plate'. Doubtless this was a convenient and efficient arrangement, but it does not, in our opinion, amount to invention, either when considered by itself or in connection with other parts of the structure that were suggested by prior art devices designed for similar purposes in the same general field. The device of the patent was well within the scope of the skilled worker in the art."

And finally we quote the well-known words of Mr. Justice Brown, in Richards v. Chase Elevator Co., 158 U.S. 299, 302, 15 S.Ct. 831, 833, 39 L.Ed. 991: "Unless the combination accomplishes some new result, the mere multiplicity of elements does not make it patentable. So long as each element performs some old and well-known function, the result is not a patentable combination, but an aggregation of elements."

We are, of course, not insensible to the presumption of validity that attaches upon the issuance and the heavy burden imposed on him who attacks the validity of the patent. See the opinions of Mr. Justice Cardozo in Radio Corporation of America v. Radio Engineering Laboratories, Inc., 293 U.S. 1, 7, 8, 54 S.Ct. 752, 78 L.Ed. 1453; and of Chief Justice Hughes in Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983. See, also, decided by our Court, Lever Bros. Co. v. Procter & Gamble Manufacturing Co., 4 Cir.,

139 F.2d 633, 640. We think, however, in the light of what has been previously stated in this opinion, that the defendant has more than met and overcome this presumption and the heavy burden of persuasion imposed by the presumption.

Patentee's counsel also advert to the commercial success of the Murdock chair which is indeed an element with some persuasive force. The law on this subject has long been settled. Mr. Justice (afterwards Chief Justice) Stone said (citing cases) in Smith v. Hall, 301 U.S. 216, 233, 57 S.Ct. 711, 718, 81 L.Ed. 1049; "Commercial success may turn the scale *when invention is in doubt.*" (Italics ours.) And Circuit Judge Soper, speaking for our Court, stated in Bulldog Electric Products Co. v. General Electric Co., 4 Cir., 105 F.2d 466, 468: "Commercial success is not of itself evidence of patentability and may be considered only as a factor entering into the decision *when the question of invention is open to doubt.*" (Italics supplied.) Since we think the question of invention is decidedly not open to doubt, the commercial success of the Murdock chair is indeed a frail reed for the patentee.

Since we think the patent in suit is invalid for lack of invention, this is sufficient to justify an affirmance of the judgment below. We, therefore, need not discuss the question of infringement, which was also decided below adversely to the patentee-plaintiff.

The judgment of the District Court is affirmed.

Affirmed.