## YATES v. JONES.
### No. 5891.

United States Court of Appeals Fourth Circuit.

Argued June 21, 1949.

Decided August 11, 1949.

A. Yates Dowell, Washington, D. C. (John S. Rixey, Norfolk, Va., on brief), for appellant.

Joe Baily Brown, Pittsburgh, Pa., and W. R. Ashburn, Norfolk, Va. (Ashburn, Agelasto & Sellers, Norfolk, Va., Brown, Critchlow, Flick & Peckham, Pittsburgh, Pa., James B. McDonough, Jr., New York City, and W. R. Cocke, Norfolk, Va., on the brief), for appellees.

Before SOPER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

DOBIE, Circuit Judge.

Sheppard Yates, holder of letters patent No. 2,408,358 for a locomotive distributor plate, instituted a civil action in the United States District Court for the Eastern District of Virginia against Samuel Jones, Berkley Machine Works and Foundry Company, Inc., and Seaboard Air Line Railroad Company. Yates alleged that defendants infringed his patent by the use and manufacture of the Berkley plate and sought injunctive and indemnitory relief against the defendants. Yates has appealed to us from a judgment of the District Court, 85 F.Supp. 615, 617, dismissing his action. In his opinion filed below, the District Judge stated: "But the Court thinks the plaintiff's case must fail because (1) his patent is invalid as lacking in invention and novelty, (2) the Berkley plate does not infringe the patent, and (3) no theft of the plaintiff's idea has been proved, but rather the prior ownership of the idea by Berkley."

The patent in suit contains two claims and Claim 2, set out below, is typical: "2. In a stoker, a coal distributing means for mounting in the feeding opening of a firebox, said means comprising a coal guiding plate formed with a horizontally disposed

steam passage parallel with the forward edge of said plate and having a plurality of main jet openings in the forward edge communicating with said passage, a pair of oppositely disposed nozzles projecting forwardly from said plate and disposed forwardly of said main jet openings, said nozzles being disposed below said main jet openings and laterally of the outermost of said main jet openings, said nozzles being formed with a pair of jet openings arranged so as to project a substantial portion of the fuel at substantially right angles to the movement of fuel effected by the fluid discharged from said main jet openings whereby fuel will be discharged into the firebox adjacent the front wall thereof, a coal guiding member depending from the forward end of said plate and engaging the adjacent wall of the firebox, a rearward extension carried by said guiding member, and means forming part of said plate for engagement with said extension and whereby said guiding member and said plate are detachably held together with each other, said guiding member being formed to receive said nozzles."

Yates, in his own testimony, clearly stated that the novelty of his invention was limited to two features:

"Q. I believe you said on your direct examination and cross-examination that there are only two claims that you make. A. That is all. * * *

"Q. Namely, the lower, lateral, advanced jets, designed and intended to put the coal in the rear portion or corners of the fire box? A. That is correct.

"Q. And the firing plate that you have described? A. That is correct."

We think the judgment before us might well be affirmed on the strength of the opinion below, without further comment from us, but we discuss briefly the points urged upon us by Yates, the patentee-appellant.

■ We are here dealing with a paper patent, in a crowded field, which has never been used commercially. Thus, the claims, in the light of the specifications, must be rather narrowly construed. In his opinion, the District Judge said: "The evidence conclusively shows that the lower, lateral, advanced jet, as well as the firing plate, have been known to the industry and art for many years prior to the construction of either the Yates or Berkley plates." [85 F. Supp. 617.]

This conclusion is amply borne out by a consideration of prior patents in this field. Particularly important here are the Capps Patent, No. 2,213,334, issued September 3, 1940, and the Chalker Patent No. 2,224,375, issued December 10, 1940. See, also, the Peyton Patent, No. 2,058,255 and the Anderson Patent, No. 2,075,158.

■ In Murdock v. Murdock, 4 Cir., 1949, 176 F.2d 434, 436, we said: "In the light, then, of the prior art, Murdock has produced an old result (double curvature of the chair seat) through old means (curved slats positioned on the concave surface of transverse arcuate rungs). Surely, under these circumstances, there is nothing patentable in Murdock's merely altering the position of the arcuate rungs. At best, Murdock discloses only a non-patentable aggregation with only slight and non-essential variants from chair seats long known in the art. His chair seat may be (as his counsel assert) cheaper, better looking and more comfortable than those of his predecessors in this field; but much more than these attributes is needed to satisfy the concept of patentability."

If we substitute in the Murdock opinion for the two old elements therein described (the curved slats and the arcuate rungs) the two old elements involved in the instant case (the lower, lateral, advanced jets and the firing plate) and for the result achieved in Murdock (the double curvature of the chair seat) the result in Yates (spreading the coal into the corners of the fire-box), the language we used in the Murdock case covers the Yates case like a glove and is completely controlling. For here, as there, we have at best only "a non-patentable aggregation with only slight and non-essential variants" over the prior art. See, also, the opinion of Circuit Judge Parker, in Young v. John McShain, Inc., 4 Cir., 130 F.2d 31, 32; the opinion of Circuit Judge

Soper, in Bulldog Electric Products Co. v. General Electric Co., 4 Cir., 105 F.2d 466, 468; and the opinion of Mr. Justice Brown, in Richards v. Chase Elevator Co., 158 U. S. 299, 302, 15 S.Ct. 831, 39 L.Ed. 991.

We think, further, that the accused device (the Berkley plate) does not constitute an infringement of Yates for two reasons. The District Judge, in his opinion, pointed out five points of difference between Yates and Berkley [85 F.Supp. 618]. "The Yates plate does not have the second step, spanning the space between the two nozzles and lying above them, as described in the Berkley plate. In lieu thereof it has only the firing plate below the upper jets. The method of attaching the firing plate to the upper plate is entirely different in the two models, and this element is of importance in rendering the plate perdurable. Again, the plate of Berkley does not rest against the rear wall or firebox, as does the Yates plate, a factor affecting the draft in the firebox as well as the life of the plate. Furthermore, the Yates plate endeavors to guide the coal into the range of the lateral jets by means of low-pressure jets, included among the upper jets. The Berkley plan keeps the coal, intended to be controlled by the lateral jets, out of the range of the upper jets. In the Yates patent all the jets are connected with one and the same steam compartment, thus not giving the same control of the jets as is found in the Berkley." An even stronger reason is the finding of the District Judge (which we must sustain) that the Berkley plate was conceived and designed before the visit of Yates to the Berkley plant in May, 1945, and that "the Berkley plate was not inspired by any disclosure made by or obtained from Yates." [85 F.Supp. 619.]

As has just been indicated, we must uphold the District Judge's finding: "Intimation that any of the defendants stole the idea for the Berkley plate from Yates finds no support in the evidence." [85 F. Supp. 619.] It would serve no useful purpose for us to add anything to the careful review of the evidence contained in the opinion below. The attempted positive showing on this point by Yates was lamentably weak; the controverting evidence of Berkley was strong, direct and convincing.

The judgment of the District Court is affirmed.

Affirmed.